[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2005
THOMAS K. KAHN
CLERK

No. 04-15716
Non-Argument Calendar

_____

D.C. Docket No. 04-00001-CR-DHB-3-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LINDSEY O'NEAL,
a.k.a. Poont,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 28, 2005)

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

Lindsey O'Neal appeals his 151-month sentence for sentence for

distribution of 5 grams or more of cocaine base (crack), in violation of 21 U.S.C.

§ 841(a)(1). O'Neal also claims that his trial counsel was ineffective. After review, we vacate O'Neal's sentence and remand for resentencing, and we dismiss without prejudice O'Neal's ineffective-assistance-of-counsel claim.

## I. BACKGROUND

### A. Plea Colloquy

Pursuant to a written plea agreement, O'Neal pled guilty to distributing 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).[1] During the plea colloquy, the government set forth the following facts, which O'Neal admitted as true. On February 28, 2001, state and federal law enforcement officers met with an informant after searching the informant and his vehicle for drugs and money and finding none. The law enforcement officers then provided the informant with $500, a transmitter, and a recording device. The informant placed a call to defendant O'Neal to arrange for the purchase of crack cocaine. The informant and O'Neal arranged to meet at a residence in Dublin, Georgia, to consummate the sale. The informant was then surveilled as he went to the residence and met with O'Neal. The informant paid O'Neal $400 in exchange for 11 grams of crack.

---

[1]O'Neal was indicted on eight other counts. However, the government dismissed those counts when O'Neal pled guilty to one count of distributing 5 grams or more of cocaine base.

**B.     PSI**

The PSI indicated that O'Neal was responsible for 161.9 grams of crack. This 161.9 gram amount included: (1) the 11 grams of crack O'Neal admitted to selling during the plea colloquy; (2) the crack amounts in four other drug transactions; and (3) the crack in an automobile O'Neal was driving. Specifically, according to the PSI, O'Neal was involved in the following four other drug transactions and a separate traffic stop at which drugs were seized: (1) 25.2 grams of crack O'Neal sold to an informant on January 12, 2001; (2) 24.2 grams of crack O'Neal sold to an informant on March 6, 2001; (3) 11.3 grams of crack O'Neal sold to an informant on April 4, 2001; (4) 51.5 grams of crack, which informants purchased from O'Neal and Sterling Jackson on December 12, 2001; and (5) 38.7 grams of crack seized from an automobile O'Neal was driving on August 5, 2001. In addition to the 38.7 grams of crack, law enforcement officers also seized a firearm from O'Neal's automobile on August 5, 2001.[2]

The PSI recommended a base offense level of 34, based on the drug quantity of 161.9 grams of crack. See U.S.S.G. § 2D1.1(c)(3) (drug offenses involving at least 150 grams but less than 500 grams of crack have a base offense

---

[2]Law enforcement officers stopped the automobile O'Neal was driving because O'Neal was not wearing his seatbelt.

level of 34).  The PSI also recommended a two-level increase, pursuant to U.S.S.G. § 2D1.1(b)(1), because O'Neal possessed a firearm on August 5, 2001. Thus, O'Neal's total offense level was 36.  With a criminal history category of II, O'Neal's Guidelines range was 210-262 months' imprisonment.

O'Neal objected to the PSI on several grounds.  First, O'Neal objected to the drug quantity set forth in the PSI.  Specifically, O'Neal asserted that he should be attributed with only 49.7 grams of crack, the sum of the crack involved in the February 28 sale and the August 5 traffic stop.  Thus, O'Neal disputed that he sold crack on January 12, March 6, April 4, and December 12.  Second, O'Neal objected to the two-level enhancement for possession of a firearm.  Third, O'Neal objected to the PSI's failure to recommend a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  According to O'Neal, his offense level should have been 27, yielding a Guidelines range of 78-97 months' imprisonment.

## C.    Sentencing

During the sentencing hearing, the government offered witnesses in support of the drug quantity enhancement, and O'Neal testified regarding the firearm enhancement.  Specifically, as to drug quantity, the government offered witnesses who testified that O'Neal was involved in the January 12, March 6, April 4, and

4

December 12 crack sales. After the testimony, O'Neal withdrew his factual objections regarding those sales. However, he reserved his right to object to the drug quantity enhancement based on Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004). Specifically, O'Neal's attorney stated:

> In light of the testimony from the witnesses today [defendant O'Neal] wants to withdraw his objection to those particular factual situations. I have spoken with [the prosecutor] about this because I didn't want Mr. O'Neal to lose his acceptance credit. . . . We would like to reserve his right to object to the relevant conduct being used to enhance his sentence as being unconstitutional, but in terms of any factual objection he would like to withdraw that objection.

The district court then specifically asked O'Neal if he wished to withdraw the factual objection to the drug quantity, to which O'Neal responded: "I want to withdraw the objection." The district court overruled O'Neal's Blakely objection to the drug quantity, noting that pursuant to this Court's precedent, Blakely did not apply to the Sentencing Guidelines.

O'Neal then testified with respect to the firearm enhancement. Specifically, O'Neal admitted that on August 5, 2001, he had crack and a firearm in his automobile. He testified, however, that he had purchased the firearm for his mother so that she could protect herself, and that the firearm was not related to the crack. The district court overruled O'Neal's objection to the U.S.S.G. § 2D1.1(b)(1) firearm enhancement, stating that "I find it more probable than not

5

that [the firearm] was connected. It may well be that the reason his mother needed the protection she did was due to [O'Neal's] own drug activity."

In sentencing O'Neal, the district court awarded O'Neal a three-level reduction for acceptance of responsibility. The district court calculated O'Neal's total offense level at 33 and his Guidelines range at 151-188 months' imprisonment. The district court sentenced O'Neal to 151 months' imprisonment followed by a 5-year term of supervised release.

O'Neal timely appealed.

## II. DISCUSSION

### A. Firearm Enhancement

On appeal, O'Neal asserts that the district court erred in enhancing his sentence by two-levels because he possessed a firearm. See U.S.S.G. § 2D1.1(b)(1). He admits that he did have crack and a firearm in his car when law enforcement officers pulled him over for not wearing a seatbelt. However, he asserts that: (1) the testimony that he bought the gun for his mother for her protection; and (2) the fact that no firearms were present during the other drug

6

deals he was indicted for, were enough to establish that it was clearly improbable that the firearm was connected to the drug offense.[3]

Under the Guidelines, a defendant receives a two-level enhancement if he possessed a firearm. U.S.S.G. § 2D1.1(b)(1). The commentary to § 2D1.1 states that the adjustment should be applied if the firearm was present, "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), cmt. n.3. "Once the government shows that a firearm was present, 'the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable.'" United States v. Fields, – F.3d –, 2005 WL 1131778, at *2 (11th Cir. May 16, 2005) (quoting United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995)).

Here, the government clearly met its burden to show that O'Neal possessed the firearm because O'Neal admitted that he did. Thus, the burden shifted to O'Neal to show that a connection between the firearm and the crack in the automobile was "clearly improbable." At sentencing, the district court actually found just the opposite: that a connection between the firearm and crack was "more probable than not." Given the connection was "more probable than not,"

_____

[3]We review the district court's factual findings for clear error, and review de novo the application of those facts to the Sentencing Guidelines. United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995).

inherent in the district court's statement is a finding that O'Neal did not meet his burden to show a connection was "clearly improbable."

We also conclude that the district court did not clearly err in its finding.[4] O'Neal stated that he had both the crack and the firearm in his car. Although he claimed that he had just bought it for his mother for her protection, O'Neal failed to provide any other evidence to support his self-serving claim, such as testimony from his mother verifying that she needed a gun to protect herself, or that she had asked him to purchase the firearm for her protection. Absent such evidence, there is nothing to suggest that O'Neal's statement that he planned to give the firearm to his mother is anything other than self-serving and it does not render the district court's finding clearly erroneous. See United States v. Moses, 289 F.3d 847, 851 (6th Cir. 2002) (concluding that the defendant's "self-serving testimony [was] inadequate to justify setting aside the district court's finding that [the defendant] failed to satisfy the "clearly improbable" standard"). Accordingly, the district court did not clearly err in its finding about the firearm.

---

[4]See United States v. Trujillo, 146 F.3d 838, 847 (11th Cir. 1998) (analyzing the positive connection between the drug transaction and the firearm and holding "that the district court's finding was not clearly erroneous"); see also United States v. Clay, 376 F.3d 1296, 1303 (11th Cir. 2004) ("We conclude that the district court did not clearly err in finding that it was improbable that the firearms found in Clay's residence were connected to the offense."); United States v. Johnson, 344 F.3d 562, 567 (6th Cir. 2003) ("In order to prevail on appeal, a defendant must show that a district court committed clear error in finding that he or she has not met the 'clearly improbable' burden of proof.").

**B.    Booker Error**

O'Neal next argues that the district court erred under United States v.

Booker, 543 U.S. __, 125 S. Ct. 738 (2005) when it enhanced his sentence based

on facts that were not charged in the indictment and that he did not admit.

Specifically, O'Neal claims that the district court erred under Booker by

determining that he was responsible for 161.9 grams of crack and in finding a

connection between the crack and the firearm.

In Booker, the Supreme Court held that Blakely applied to the Sentencing

Guidelines.  United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir. 2005).

Under Booker, "there are two types of sentencing errors: one is constitutional and

the other is statutory."  United States v. Dacus, – F.3d –, 2005 WL 1017985, at *2

(11th Cir. May 3, 2005).  "[T]he Sixth Amendment right to trial by jury is violated

where under a mandatory guidelines system a sentence is increased because of an

enhancement based on facts found by the judge that were neither admitted by the

defendant nor found by the jury."  Rodriguez, 398 F.3d at 1297.  The statutory

error occurs when the district court sentences a defendant "under a mandatory

Guidelines scheme, even in the absence of a Sixth Amendment enhancement

violation."  United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

9

In this case, we conclude that there is no Sixth Amendment violation as to the drug quantity enhancement, but that there is a Sixth Amendment violation as to the firearm enhancement. As to drug quantity, the PSI held O'Neal responsible for 161.9 grams of crack. Of that amount, O'Neal admitted in his plea colloquy that he sold 11 grams of crack to an informant on February 28, 2001. Further, O'Neal failed to object to the 38.7 grams of crack found in his car on August 5, 2001. Finally, during sentencing O'Neal waived all of his factual objections to the drug quantity in the PSI, which included the remaining quantities of crack: 25.2 grams, 24.2 grams, 11.3 grams, and 51.5 grams (for a sum total of 161.9 grams of crack). Thus, O'Neal admitted to being responsible for 161.9 grams of crack, and there is no Sixth Amendment violation. See United States v. Burge, – F.3d –, 2005 WL 1005295, at *8 (11th Cir. May 2, 2005) ("Burge waived his objections to the factual statements about his relevant conduct in the presentence report and, therefore, admitted the facts in that report."); see also United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (concluding that because defendant raised no objections to the factual statements in the PSI and stated that he did not dispute matters in the PSI, the defendant admitted to the facts in the PSI and there was no Sixth Amendment violation).

As to the two-level firearm enhancement, O'Neal also admitted that he had both crack and a firearm in his car. However, as outlined above, O'Neal never admitted that a connection existed between the firearm and the crack. The district court made that fact-finding. Although we affirm that fact-finding, O'Neal's Sixth Amendment rights were violated because O'Neal's sentence was enhanced, under a mandatory Guidelines system, based on facts neither found by a jury nor admitted by O'Neal. The Sixth Amendment violation stemmed not from the district court's extra-verdict enhancements, but from the district court's use of those extra-verdict enhancements in sentencing O'Neal in a mandatory Guidelines scheme. Rodriguez, 398 F.3d at 1301.

O'Neal properly preserved his Booker claim in the district court by objecting based on Blakely. When there is a timely objection in the district court, we review the defendant's Booker claim de novo and determine whether the error is harmless. See United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

After reviewing the record, we conclude that the government has failed to meet its burden to show that the Booker constitutional error was harmless. See Paz, 405 F.3d 948-49.[5] In Paz, which was a Booker-constitutional-error case, we

_____

[5]"To find harmless error, we must determine that the error did not affect the substantial rights of the parties." Paz, 405 F.3d at 948 (quoting United States v. Hernandez, 160 F.3d 661, 670 (11th Cir. 1998)). "A constitutional error, such as a Booker error, must be disregarded as not affecting

11

explained that harmless error analysis puts the burden on the government to show "beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained." Id. at 948. Thus, the government must show beyond a reasonable doubt that the mandatory, as opposed to the advisory, application of the guidelines did not contribute to the defendant's sentence. See United States v. Davis, – F.3d – , 2005 WL 1033422, at *1 (11th Cir. May 4, 2005). In the record in this case, there is no evidence indicating what effect, if any, changing from a mandatory to an advisory approach would have had on the district court's sentencing decision. Accordingly, "[w]e simply do not know what the sentencing court would have done had it understood the guidelines to be advisory rather than mandatory, and had properly considered the factors in 18 U.S.C. § 3553(a)." Id. at *2. "Therefore, the Government cannot meet its burden of showing that the mandatory application of the guidelines in violation of [O'Neal's] Sixth Amendment right was harmless beyond a reasonable doubt." Id.

Thus, we vacate O'Neal's sentence and remand for resentencing. We note that the district court correctly calculated O'Neal's Guidelines range of 151 to 188 months' imprisonment. See United States v. Crawford, – F.3d –, 2005 WL

---

substantial rights if the error is harmless beyond a reasonable doubt." Id. (internal quotation marks, punctuation and citation omitted).

1005280, at *3-4 (11th Cir. May 2, 2005) (stating that after <u>Booker</u>, district courts must consult the Guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate <u>correctly</u> the sentencing range prescribed by the Guidelines").  Accordingly, on remand, the district court is required to sentence O'Neal under an advisory Guidelines regime, and shall consider the Guidelines range of 151-188 months' imprisonment and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)."  <u>Booker</u>, 125 S. Ct. at 757.[6]

## C.    Ineffective Assistance of Counsel

Finally, O'Neal contends that his trial counsel was ineffective because (1) at sentencing, his trial attorney withdrew his objections to the relevant conduct used to enhance the amount of drugs attributed to him so that O'Neal would not lose his credit for acceptance of responsibility, and (2) his attorney advised him to admit to conduct other than the 5 grams of cocaine base alleged in the indictment.[7]

---

[6]We do not mean to imply that on remand the district court must impose a lesser sentence. Rather, we merely hold that the government has failed to meet its burden to show that the <u>Booker</u> constitutional error of sentencing under a mandatory Guidelines regime was harmless.

We also will not attempt to decide now whether a particular sentence below or above the Guidelines range might be reasonable in this case.  If there is an appeal of the actual post-remand sentence which raises that issue, we can decide it then.

[7]In two passing references, O'Neal also asks us to allow him to withdraw his plea because it was not knowing and voluntary.  However, because O'Neal does not set forth any analysis of this claim other than these passing references, he has abandoned that issue.  <u>See</u> <u>United States v. Cunningham</u>, 161 F.3d 1343, 1344 (11th Cir. 1998) (when a defendant fails to offer argument on an issue, it is abandoned).

13

Generally, we do not consider ineffective assistance of counsel claims on direct appeal when "the district court did not consider the claim nor develop a factual record." United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). In the present case, O'Neal did not raise his ineffective assistance of counsel claim in the district court, nor did the district court conduct a review of such a claim. Although O'Neal's attorney's objections to the PSI and the transcript of the sentencing hearing are available for review, these materials do not address any arguments or contain evidence relating to an ineffective assistance claim. Further, the government was never given the opportunity to respond to O'Neal's claim. Because the record has not been sufficiently developed, we dismiss O'Neal's ineffective-assistance-of-counsel claim without prejudice. See Massaro v. United States, 538 U.S. 500, 509, 123 S. Ct. 1690, 1696 (2003) ("We . . . hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.").

### III. CONCLUSION

For the foregoing reasons, we vacate O'Neal's sentence and remand for resentencing, and we dismiss without prejudice O'Neal's ineffective-assistance-of-counsel claim.

**DISMISSED IN PART; VACATED AND REMANDED IN PART.**