NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0474n.06

No. 07-4405

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 09, 2009**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SCOTT KOLLAR,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

Before: GILMAN and McKEAGUE, Circuit Judges; BARRETT, District Judge.[*]

BARRETT, District Judge. Scott Kollar ("Kollar") appeals the district court's judgment sentencing him to a below-guidelines sentence of 169 months' imprisonment following his guilty plea and conviction of conspiracy to possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841 and 846. Kollar argues that the district court erred when it refused to disregard Kollar's career offender status, when it denied his request for a two-point downward departure in offense level for his minor role in the drug conspiracy, and when it denied his request for a one-level downward departure in criminal history because category VI substantially over-represented the seriousness of his criminal history. In addition, Kollar argues that his sentence is unreasonable. For the reasons that follow, we affirm.

---

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

I.

Beginning in July 2006, Cleveland Police became aware, from a confidential source, that Henry Hernandez was involved in heavy cocaine trafficking. Hernandez was the appellant's co-defendant. In October 2006, Cleveland Police learned that Kollar was one of Hernandez's associates that assisted him with his drug trafficking.

Hernandez arranged a cocaine deal with the confidential source, which took place on or about March 8, 2007. Kollar and Hernandez met the confidential source, who gave Hernandez $900 for cocaine that was to be delivered later. The next day, Kollar delivered the cocaine to the confidential source, who then gave it to an undercover law enforcement agent named "Bobby" who had accompanied him. Kollar then informed Bobby that he could deal with him directly for future transactions and offered a price of $875 per ounce of cocaine. Kollar then provided Bobby with his phone number. A few days later, Bobby contacted Kollar to arrange another sale. Bobby met Kollar at Kollar's apartment, where Kollar provided 40 grams of cocaine to Bobby in return for $1,320.

Law enforcement then executed a search warrant for Kollar's apartment, apartment #7. Kollar was not present. However, the occupants told the officers that Kollar was in another apartment in the same building. Law enforcement began surveillance outside the other apartments in the building and observed Hernandez leaving apartment #8. Kollar was observed inside that same apartment. When a search warrant was later executed on apartment #8, a hydraulic press used to repackage cocaine was seen in plain view. Approximately 470 grams of cocaine, the hydraulic press, and items used for cutting cocaine were seized. Kollar admitted that he and Hernandez would open the packages of cocaine, add a cutting agent to the cocaine, and repackage it for distribution.

However, Kollar was not in possession of any of the marked money used by Bobby to purchase the cocaine. Most of that money was found in Hernandez's possession.

On April 11, 2007, a federal grand jury in the Northern District of Ohio returned an indictment charging Scott Kollar and a co-defendant, Henry Hernandez, with conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841 (b)(1)(B), and 21 U.S.C. § 846 (Count 1), as well as possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(c) (Count 4). Kollar was also charged with two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c) (Counts 2 and 3).

On June 8, 2007, the government filed an information, under 21 U.S.C. § 851, notifying Kollar of its intent to rely on a prior conviction to enhance the applicable penalty provisions under 21 U.S.C. § 841(b). On June 11, 2007, Kollar pleaded guilty to Count 1 of the indictment, pursuant to a written plea agreement with the government containing a limited appeal waiver, in exchange for a dismissal of the other three counts. Kollar signed the plea agreement containing the above factual basis and an appellate waiver provision. During the plea colloquy, Kollar confirmed that he signed the agreement and initialed each page. The waiver provision of the plea agreement did not specifically preserve Kollar's right to challenge the district court's determination about Kollar's career offender status and a minor role in the offense reduction; however, at the change of plea hearing, the parties agreed that Kollar could appeal those issues. The plea agreement was modified to reflect this agreement. During the plea colloquy, Kollar knowingly and voluntarily waived his appellate rights except the right to appeal: (a) a sentence above the statutory maximum or in excess

of the maximum sentencing range under the Guidelines, or (b) the court's determination about Kollar's career offender status, minor role in the offense reduction, prosecutorial misconduct or ineffective assistance of counsel. The district court accepted Kollar's plea and found him guilty on count one.

On October 1, 2007, Kollar was sentenced to 169 months' imprisonment, followed by five years of supervised release and ordered to pay a $100 special assessment. Pursuant to the government's recommendation, the court also dismissed the remaining counts against Kollar. The district court issued its judgment on October 17, 2007. This appeal followed.

II.

Career Offender Status

"In reviewing a district court's application of the Sentencing Guidelines, this Court will 'accept the findings of fact of the district court unless they are clearly erroneous and [will] give due deference to the district court's application of the Guidelines to the facts.'" *United States v. Moon*, 513 F.3d 527, 539-40 (6th Cir.), *cert. denied*, 128 S. Ct. 2493 (2008) (quoting *United States v. Williams*, 355 F.3d 893, 897-98 (6th Cir. 2003)); 18 U.S.C. § 3742(e). "A factual finding is clearly erroneous 'when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Moon*, 513 F.3d at 539-40 (quoting *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)). This Court reviews the legal conclusions regarding the Sentencing Guidelines *de novo*. *Id.*

Here, there are no factual findings in dispute. Kollar admitted to the facts in his plea agreement, and it was from those facts that the district court based its sentencing decision. However,

Kollar argues that the district court erred when it "relied on case law that was subsequently overturned when it held that it was legally required to increase the appellant's sentence due to his career offender designation." Kollar asserts that the district court was referring to *U.S. v. Funk,* 477 F.3d 421, 430 (2007) (*"Funk I")* which held that "a district court making sentencing determinations may not implicitly reject Congress' policy decision to prescribe harsher penalties for career offenders by ignoring or outright rejecting a defendant's status as a career criminal offender."

Funk I was remanded by *Funk v. United States*, ___ U.S. ___, 128 S. Ct. 861 (2008), without opinion, in light of *Gall v. United States*, 552 U.S. 38 (2007). On remand, this Court considered *Gall,* as well as *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Rita v. United States*, 551 U.S. 338 (2007), and found that the sentence given to Funk was unreasonable due to the district court imposing its own policy determination regarding marijuana convictions over that of Congress and the Guidelines and because the district court failed to adequately justify the variance. *United States v. Funk,* 534 F.3d 522 (6th Cir. 2008) ("*Funk II")*. However, the opinion of the panel was vacated pursuant to this Court's order granting *en banc* review. The government then moved to dismiss the appeal, to which Funk did not object. This Court granted the motion to dismiss and held that the panel opinion (*Funk II)* remained vacated. *See United States v. Funk*, 560 F.3d 619 (2009). Irrespective of *Funk I* and *Funk II,* the district court did not err in sentencing Kollar. The district court properly considered the Guidelines and therefore, did not commit a significant procedural error.

Kollar moved for a variance down to the mandatory minimum of 120 months, asking the district court to disregard his career offender status. A defendant is a career offender if: (1) he was at least eighteen years old at the time he committed the instant offense; (2) the instant offense is a

felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions for either a violent crime or a controlled substance offense. U.S.S.G. § 4B1.1. There is no dispute in this matter that Kollar is a career offender.

The reasoning behind Kollar's request for a variance was so that Kollar's sentence would be more aligned with that of his co-defendant's. Hernandez, who was not a career offender, received a sentence of 63 months. In response, the district judge stated "[y]ou understand by doing that I would not be giving any effect whatsoever to the career offender designation, and there is recent case law that says that that's not something the Court may do, that I can't just ignore [ ] a career offender designation." (ROA, Tr. Vol. 6, 15).

A district court is required to properly calculate the Guidelines range. As the Supreme Court explained in *Gall,* the Guidelines are "the starting point and the initial benchmark for federal sentencing." *United States v. Thompson*, 515 F.3d 556, 561 (6th Cir. 2008); *Gall*, 128 S. Ct. at 596. The district court is also to consider the 18 U.S.C. § 3553(a) factors. The § 3553(a) factors include: (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely, (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. *Rita,* 551 U.S. at 347-348. "The sentencing judge is to 'impose a sentence sufficient, but not greater than necessary, to comply with' the basic aims of sentencing as set out above." *Id.*

In determining the sentence, the district court stated that "the reason there is such a disparity [between Kollar's Guidelines range and Hernandez's sentence] is because, two things, [Kollar] is

a natural six, and if there were a higher category, he would probably be a seven or an eight, because he's got 18 criminal history points, and 13 starts at a six, he's actually aided by the fact we don't go above six; and he's a career offender ...." (ROA, Tr. Vol. 6, 17). The district court continued, "[s]o Mr. Hernandez was a category four and was not a career offender. [Kollar] is a natural six, and is a career offender. And the guidelines I think correctly require me to consider all of that." (*Id*.). In fact, Kollar may have had "up to five predicate offenses," given his prior convictions for (1) robbery; (2) aggravated robbery with firearms specification; (3) trafficking in cocaine; (4) unlawful sexual contact; and (5) intimidation and assault. (*Id.* at 17-18). Finally, the district court considered the Guidelines range for a career offender with a criminal history category of six, which is 210 to 262 months,[1] and stated the following:

> I've looked at Mr. Kollar's criminal history. Although he has 18 criminal history points, he has not served a sentence greater than three years. I'm also considering that Mr. Hernandez, who's responsibility, criminal involvement, was greater than Mr. Kollar, got a sentence of 63 months. I have to give some effect to the fact that Mr. Kollar is a criminal history category six and he's career offender, but a sentence of 210 to 262 months I think is substantially greater than necessary to meet the statutory purposes of sentencing and would be unfairly harsh.
>
> So what I'm going to do, and I think it is the fairest and most appropriate sentence, is to pick a sentence that is between the advisory range for career offender, 210 to 262, and the 120 to 150, which would be the range without the career offender. And that would be a level 29, criminal history category six, which is 151 to 188, and give Mr. Kollar midpoint of that, which is 169 months. That is still approximately four years above the mandatory minimum and that certainly gives effect and impact to the

---

[1] Initially, Kollar started at an offense level of 37. He was given a two level reduction for acceptance of responsibility and a third level off for a timely guilty plea taking him to a 34 with a category six, which is a range of 262 to 327 months. (ROA Tr. Vol. 7-8). Kollar was then given another two level reduction to 32 based upon the filing of a § 5K1.1 motion, which reduced the range to 210 to 262 months. (Id. at 8-9).

career offender designation. But I believe if 169 months is not sufficient to protect the community, deter Mr. Kollar from future conduct, I don't know that another three or four years will accomplish anything more.

(ROA, Tr. Vol. 6, 24).

It is clear that the district court did not treat the Guidelines as mandatory and that the district court only considered the Guidelines and Kollar's career offender status as one of the 18 U.S.C. § 3553(a) factors. Here, the district court correctly stated that "the Sentencing Guidelines are only advisory, however, I must consult them, first compute the advisory range correctly and then consult the Guidelines and consider all of the circumstances of this particular defendant, the nature of the conduct, and then impose a sentence which is sufficient but not greater than necessary to meet the statutory purposes of sentencing." (ROA, Tr. Vol 6, 23).

Thus, the district court did not err and the sentencing decision is procedurally sound.

<u>Two-level minor role adjustment</u>

"Whether a defendant is entitled to a downward offense-level adjustment under U.S.S.G. § 3B1.2 'depends heavily on factual determinations, which we review only for clear error.'" *United States v. Bailey,* 488 F.3d 363 (6th Cir. 2007)(quoting *United States v. Harris*, 397 F.3d 404, 409 (6th Cir. 2005)). "The defendant has the burden of proving by a preponderance of the evidence that he is entitled to the reduction." *Id*. at 369 (citing *United States v. Salgado*, 250 F.3d 438, 458 (6th Cir.), *cert. denied*, 534 U.S. 916 (2001)).

Kollar requested a two level minor role reduction in the offense level under U.S.S.G. § 3B1.2 of the Guidelines based upon his role in the conspiracy being less than that of his co-defendant, Hernandez. In response, the district court found that "while Mr. Kollar's role may have been less

than Mr. Hernandez, it's not so much less that a role in the offense reduction is appropriate. It wasn't recommended by the probation department. It's opposed by the government. So I'm not going to apply it." (ROA, Tr. Vol. 6, 23). U.S.S.G. § 3B1.2(b) provides that if a defendant was a minor participant in any criminal activity, his offense level may be decreased by two levels. A minor participant is defined as one who is "substantially less culpable than the average participant" and "less culpable than most other participants." U.S.S.G § 3B1.2 commentary, applic. notes 3 and 5; *United States v. Owusu*, 199 F.3d 329, 337 (6th Cir. 2000). "A defendant who plays a lesser role in a criminal scheme may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme, or if his importance in the overall scheme was such as to justify his sentence." *United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001).

Here, Kollar admitted to delivering cocaine to the confidential source who then gave it to "Bobby," the undercover agent. Kollar then arranged a subsequent buy with Bobby. He delivered cocaine to Bobby and accepted payment from Bobby for the cocaine. He also admitted to assisting Hernandez in adding a cutting agent to the cocaine and repackaging it, which took place in the apartment building where Kollar was living. Although the district court found that Kollar may be less culpable than Hernandez, the leader of the conspiracy, we are unable to ascertain the culpability of "most other participants" or "an average participant" since there are only two defendants in this case. *See United States v. Lopez*, 545 F.3d 515, 517 (7th Cir. 2008)("in situations where criminal activity involves only two participants (and thus it is impossible to ascertain the culpability of an 'average' participant), the key inquiry is the degree of the defendant's culpability relative to the other participant's and the scope of the criminal enterprise."). Therefore, even though Kollar may be less

culpable than Hernandez, his role was indispensable because he aided in the cutting and repackaging of the cocaine as well as arranging and carrying out drug deals. In addition, there is evidence in the record to show that Hernandez had many "associates"; however, Kollar failed to show that these "other associates" were involved to the same or a greater degree than he was. Thus, the district court did not err in refusing to grant Kollar's requested reduction. *See United States v. Bartholomew*, 310 F.3d 912, 925 (6th Cir. 2002) (denying a minor role reduction where the defendant's residence was used as a base of operations, he participated in drug transactions, stored a shotgun, and personally received at least one shipment of marijuana).

One-level Downward Departure[2]

"This court generally does 'not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure.'" *United States v. Johnson*, 553 F.3d 990, 999 (6th Cir. 2009) (quoting *United States v. Santillana,* 540 F.3d 428, 431 (6th Cir.), *cert. denied*, 129 S. Ct. 469 (2008)); *see also United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005), *cert. denied*, 547 U.S. 1122 (2006); *United States v. Madden*, 515 F.3d 601 (6th Cir. 2008).

Kollar asked the district judge for a downward departure of his criminal history computation under U.S.S.G. § 4A1.3(b)(1) because it allegedly over-represented the seriousness of his criminal history. U.S.S.G. § 4A1.3(b)(1) provides that a downward departure may be granted "[i]f reliable

---

[2]As to this issue, Kollar references, in his brief, that the trial court abused its discretion by denying appellant a downward departure of one criminal history level due to his troubled upbringing but he does not raise any arguments or set forth any facts to support it.

information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). However, the record fails to show that the district court was unaware of, or did not understand, its discretion to make such a departure. In fact, the opposite is true since the district court fully considered Kollar's criminal history and then granted a substantial assistance departure and granted a substantial variance below the recommended Guidelines range.

Unreasonable Sentence under 18 U.S.C. § 3553

Kollar has waived his right to appeal this issue as it was not one of the limited appealable issues set forth in his plea agreement. "Criminal defendants may waive their right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily." *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) (citing *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001)). We review this type of waiver *de novo*. *Id.* at 626.

The plea agreement stated the following:

> Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. The Defendant expressly waives those rights, except as reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; (b) any sentence to the extent it exceeds the maximum of the sentencing range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the Criminal History Category found applicable by the Court. Nothing in this paragraph shall act as a bar to the Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

At the change of plea hearing, the parties agreed that Kollar could appeal the career offender designation and the minor role reduction issue. The parties modified the plea agreement by striking the two provisions stating that Kollar could not appeal those issues. During the plea colloquy, Kollar confirmed that he signed the agreement and initialed each page. He also confirmed that he was giving up his right to appeal except as to the issue of career offender and/or role in the offense. Kollar answered in the negative when asked if anyone was threatening or pressuring him. Thus, Kollar knowingly and voluntarily waived his appellate rights except those set forth above. The issue of the reasonableness of his sentence was not one that Kollar preserved for appeal. Thus, this issue is waived.

III.

The judgment of the district court is affirmed.