NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0203n.06

No. 09-1455

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Apr 01, 2011

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff-Appellee, | ) |
| | ) |
| v. | )   ON APPEAL FROM THE UNITED |
| | )   STATES DISTRICT COURT FOR THE |
| FRANCISCO CRUZ CABALLERO | )   EASTERN DISTRICT OF MICHIGAN |
| | ) |
|     Defendant-Appellant. | ) |
| | ) |

Before: MERRITT, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Francisco Cruz Caballero

appeals the 136-month sentence imposed by the district court after he pled guilty to conspiracy to

possess heroin with intent to distribute in violation of 21 U.S.C. § 846; possession of heroin with

intent to distribute in violation of 21 U.S.C. § 841(a)(1); and being an illegal alien in possession of

a firearm in violation of 18 U.S.C. § 922(g)(5)(A). He argues that the district court failed to rule

upon his request for a minor role adjustment pursuant to the United States Sentencing Guidelines

("U.S.S.G." or "Guidelines") § 3B1.2, in contravention of Rule 32 of the Federal Rules of Criminal

Procedure. He also argues that the district court committed plain error by imposing a two-level

enhancement to his offense level pursuant to U.S.S.G. § 2D1.1(b)(1) for the possession of a firearm

1

in connection with a drug-trafficking offense. For the reasons that follow, we affirm the district court's sentencing decision.

I.

On June 16, 2008, the Oakland Macomb County Interdiction Team ("OMIT") was notified by a confidential informant that three individuals—who were later identified as Francisco Cruz Caballero, Jesus Sandoval, and Jesus Ivan Lopez Ramos—were staying at the Super Eight Motel in Sterling Heights, Michigan, and were possibly trafficking narcotics from this location. Sandoval, Caballero, and Ramos, who were all aliens residing illegally in the United States, had traveled to Michigan from Atlanta, Georgia. At approximately 8 a.m. the same day, OMIT began surveillance of the hotel area and identified two vehicles—a black Nissan Altima and a tan Honda Accord—with Georgia license plates. A K-9 unit was summoned to the scene, performed an exterior search of the vehicle, and alerted positively to the presence of narcotics on both vehicles.

At approximately 1:30 p.m., OMIT officers observed three men exit the motel and enter the Honda. After circling the motel, the Honda pulled alongside the Nissan, and Ramos exited the vehicle, retrieved an unidentified object from the Nissan, and returned to the Honda. OMIT officers continued mobile surveillance as the Honda departed the area and, after observing several traffic violations, conducted a traffic stop, in which the driver, Sandoval, was placed under arrest for failing to produce a driver's license. The officers asked Caballero and Ramos to exit the vehicle, and the K-9 unit performed a second exterior search, again alerting positively to the presence of narcotics. The officers then searched the vehicle, finding an open duffel bag behind the driver's seat that contained two handguns—a Smith & Wesson .357 and a Taurus 9 mm—and various pictures of

Jesus Malverde, the "patron saint" of drug traffickers. Caballero and Ramos were subsequently arrested for the possession of weapons without a concealed weapons permit. The three men collectively possessed $777.00.

Upon obtaining a search warrant, officers searched the room in which Caballero, Ramos and Sandoval were staying and retrieved 1,007.3 grams (approximately 1 kilogram) of heroin and $24,700 in United States currency. When questioned separately the next day, Caballero told the officers that he was in Detroit to purchase a car, Ramos stated that they found the heroin and money in a bush outside the motel, and Sandoval maintained that they found the heroin at the motel.

After Caballero pled not guilty to an initial indictment on July 8, the government filed a Superseding Indictment on October 15, charging him with the following offenses: (1) conspiracy to possess heroin with intent to distribute, (2) possession of heroin with intent to distribute, (3) carrying a firearm during and in relation to a drug trafficking crime, and (4) being an illegal alien in possession of a firearm. Caballero again pled not guilty to all counts on October 17.

Despite his initial pleas, Caballero entered a guilty plea to Counts 1, 2, and 4 of the Superseding Indictment on December 1, at which point the government moved to dismiss Count 3 in the interests of justice. The judge apprised Caballero that Counts 1 and 2 each carried a minimum sentence of 120 months' imprisonment and a maximum sentence of life imprisonment and that Count 4 carried a maximum sentence of 120 months' imprisonment. Following the plea hearing, the probation office prepared a Presentence Investigation Report ("PSR") recommending a guideline imprisonment range of 121–151 months based upon Caballero's offense level of 32 and criminal history. In particular, the PSR noted that Caballero had not filed any objections to the PSR within

3

the time limitations of Local Rule 32.1.[1]  Nevertheless, Caballero filed an untimely sentencing

memorandum on March 12, 2009, requesting the minimum 120-month sentence and seeking the

redaction of certain paragraphs in the PSR that described prior Arizona charges of kidnapping,

aggravated assault, and armed robbery that had been dismissed, as he feared such reference would

adversely affect his security classification within the Bureau of Prisons.

At the sentencing hearing before United States District Judge Lawrence P. Zatkoff on March

31, defense counsel unsuccessfully reiterated the objection to the inclusion of the Arizona charges

and stated that Caballero had no additional objections to the PSR and no further requests to modify

its content.  Judge Zatkoff then permitted counsel to speak on behalf of Caballero in mitigation and

"[a]s distinguished from the [PSR]."  Defense counsel again requested that the court impose the

minimum 120-month sentence, particularly in light of the fact that co-defendant Sandoval had been

sentenced to the minimum.  After defense counsel's statement, Judge Zatkoff afforded Caballero an

opportunity to speak on his own behalf, at which point Caballero expressed regret for his crimes,

requested a second chance, and stated the following:

> I am illegal and the Government is going to pay a lot of money for
> people like me.  That's why I dare to say I don't want to offend you,

---

[1]Local Rule 32.1(b) provides that, within 14 days of disclosure of the PSR, counsel for the defendant "shall communicate to the probation officer . . . any objections to any material information, sentencing classifications, sentencing guideline ranges, and policy statements which are contained in, or omitted from, the report.  Such communication shall be in writing and shall be signed by the defendant or counsel for the defendant."  E.D.Mich. LR 32.1(b).  The requirements of Local Rule 32.1(b) are identical to Federal Rule 32(f)(1), which provides that the parties, within 14 days after receiving the PSR, "must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report."  Fed. R. Crim. P. 32(f)(1).

> your Honor, but I want you to please consider giving me the least participant, the low participation or something.

Before imposing the sentence, Judge Zatkoff stated that he had reviewed the PSR, found the Guidelines recommendation to be properly computed at a range of 121–151 months, and determined that Caballero was not similarly situated to Sandoval, as Caballero faced an additional firearms charge. He then sentenced Caballero to 136 months' imprisonment for Counts 1 and 2 and to 120 months' imprisonment for Count 4, with the sentences to run concurrently and to be followed by five years of supervised release. Caballero appeals.

## II.

Caballero argues that the district court violated Rule 32 by failing to rule upon his request for a minor role adjustment pursuant to U.S.S.G. § 3B1.2. He premises this claim upon his request for "low participation" at the sentencing hearing, which he contends was clearly a request for a minor role adjustment. Pursuant to Federal Rule of Criminal Procedure 32, the sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). In particular, Rule 32 "prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the [PSR] without making factual determinations of its own." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (internal quotations omitted). But, there is "'no reason to require a district court to make independent findings outside the PSR when the facts are undisputed.'" *Id.* (quoting *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003)).

Under Rule 32(f), in order to dispute a finding in the PSR, a party must file written objections within 14 days of receiving it, "including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1); *see also* E.D.Mich. LR 32.1(b) (requiring parties to file objections to the PSR within 14 days after receiving it). If, however, a party fails to make objections within this 14-day window, the court at sentencing "may, for good cause, allow a party to make a new objection at any time before sentence is imposed." Fed. R. Crim. P. 32(i)(1)(D); *see also* E.D.Mich. LR 32.1(e) (permitting the court, "upon a showing of good cause," to allow new objections "to be raised at any time prior to the imposition of sentence").

In this case, defense counsel did not object to the PSR based upon Caballero's alleged entitlement to a minor role adjustment. It is undisputed that defense counsel did not file any written objections to the PSR within 14 days after receiving it on the grounds of a minor role adjustment, as is required under Local Rule 32.1(b). Moreover, defense counsel made no untimely written or oral objection on this basis. At sentencing, when Judge Zatkoff asked whether Caballero had any objections, corrections, or deletions to the PSR, defense counsel affirmed that he had thoroughly reviewed the PSR with Caballero, who wished only to dispute the inclusion of the Arizona charges. Although Local Rule 32.1(e) permits the district court to allow belated objections upon a showing of good cause, defense counsel never raised the issue of a minor role adjustment.

Nevertheless, Caballero contends that his casual reference to "low participation" during his allocution must be construed as a formal objection to the PSR. We disagree. Caballero neither cited the minor role guideline under U.S.S.G. § 3B1.2 nor developed any meaningful argument regarding

this adjustment. *See United States v. Martinez-Vargas*, 321 F.3d 245, 248 n.4 (1st Cir. 2003) (finding no timely objection to the PSR based on a minor role claim when the defendant "never referred to the role-in-the-offense guideline" or "develop[ed] his 'helper' argument in any meaningful way"). Therefore, his reference to "low participation" cannot be properly understood as a belated objection to the PSR on the basis of a minor role adjustment, and the district court's obligations under Rule 32(i)(3)(B) were never triggered.

Given his failure to raise the minor role adjustment objection in the district court, Caballero is entitled only to plain error review in this court. *See United States v. Ellerbee*, 73 F.3d 105, 108 (6th Cir. 1996) (reviewing appellant's claim only for plain error when he failed to argue it in the district court). To prevail, he must show that an error occurred in the district court, the error was plain, it affected his substantial rights, and "this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006) (internal quotations omitted). "The plain error doctrine mandates reversal only in exceptional circumstances and only where the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994) (internal quotations omitted).

### A.

Caballero contends that he was entitled to a minor role adjustment under U.S.S.G. § 3B1.2(b), which provides that a defendant who "was a minor participant in any criminal activity" is entitled to a mitigating role adjustment, resulting in a two-level decrease to his offense level under the Guidelines. As defined by § 3B1.2, a minor participant is a defendant "who is less culpable than

most other participants, but whose role could not be described as minimal." U.S.S.G. Manual §

3B1.2 cmt. n.5. The application notes emphasize that the minor role adjustment is a "heavily" fact-

based determination and that the district court, "in weighing the totality of the circumstances, is not

required to find, based solely on the defendant's bare assertion, that such a role adjustment is

warranted." *Id.* § 3B1.2 cmt. n.3(C). Indeed, the "determination of a defendant's culpability is

heavily dependent upon the facts, and the defendant has the burden of proving mitigating factors by

a preponderance of the evidence." *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002)

(internal quotations and citation omitted).

This court has previously interpreted the applicability of a minor role adjustment in similar

factual scenarios. In *Bartholomew*, defendant Harris and two co-defendants were convicted by a jury

for conspiracy to distribute marijuana. *Id.* at 916. Additionally, Harris was convicted of possession

with intent to distribute marijuana. *Id.* Although Harris contended that the district court erred in

refusing his request for a minor or minimal role reduction pursuant to § 3B1.2, we affirmed the

district court, noting that Harris was not entitled to a minor or minimal role reduction because he

"was a fully integrated member of a substantial drug conspiracy that used his residence as a base of

operations" and had "participated in several drug transactions . . . stored a shotgun and ammunition

in the closet near the stairs to his basement, and personally received at least one large shipment of

marijuana." *Id.* at 924–25; *see also United States v. Kollar*, 336 F. App'x 497, 502 (6th Cir.)

(finding that defendant was not entitled to a minor role reduction with respect to his conviction for

conspiracy to possess with intent to distribute cocaine since, "even though [he] may [have been] less

culpable than [his co-defendant], his role was indispensable because he aided in the cutting and

repackaging of the cocaine as well as arranging and carrying out drug deals"), *cert. denied*, 130 S. Ct. 643 (2009); *Ellerbee*, 73 F.3d at 108 (finding that defendant was not entitled to a minor role reduction in a mail fraud case when he "was the major, if not sole, participant in the fraud scheme").

Like the defendants in *Bartholomew*, *Kollar*, and *Ellerbee*, Caballero was not entitled to a minor role adjustment for his participation in the heroin conspiracy and trafficking crimes because his role was not minor within the meaning of § 3B1.2. On December 1, 2008, Caballero pled guilty to three charges: conspiracy to possess with intent to distribute heroin; possession with intent to distribute heroin; and being an illegal alien in possession of a firearm. During the plea colloquy, Caballero admitted that he and his co-defendants had traveled from Atlanta to Detroit with heroin and several handguns for the purpose of distributing heroin to a third party. Consistent with this testimony, OMIT officers observed Caballero and his co-defendants depart the Super Eight Motel together, and Caballero was present in the Honda when it was stopped. Despite his request for "low participation," Caballero has not provided any evidence suggesting that he played a minor role in the offenses or was less culpable than his co-defendants. Therefore, he was not entitled to a minor role adjustment under § 3B1.2.

### B.

Caballero also contends that the district court plainly erred in applying a two-level enhancement to his sentence under U.S.S.G. § 2D1.1(b)(1) for the possession of firearms in connection with a drug trafficking offense, as there was no evidence establishing a nexus between

the heroin and handguns.[2]  In response, the government maintains that the firearms need not be seized from the same location as the narcotics to apply a firearms enhancement under § 2D1.1(b)(1). We conclude that the district court did not plainly err in imposing the two-level sentencing enhancement, as Caballero has failed to show that it is clearly improbable that the handguns were connected to the heroin conspiracy and trafficking offenses.

Section 2D1.1(b)(1) provides a two-level increase in a defendant's offense level if a firearm is "possessed" during a drug-trafficking crime.  This enhancement "is proper only if the government establishes, by a preponderance of the evidence, that (1) the defendant possessed a dangerous weapon (2) during the commission of a drug-trafficking offense." *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002).  If the government proves both elements, "the weapon is presumed to have been connected to the defendant's offense." *Id.*  "The defendant can rebut this presumption only by showing that it is 'clearly improbable that the weapon was connected to the offense.'" *Id.* (quoting U.S.S.G. Manual § 2D1.1 cmt. n.3).  Here, the government met its burden of showing possession because Caballero pled guilty to the firearms possession charge and admitted at the plea colloquy that he and his co-defendants possessed a 9 mm semiautomatic pistol and a .357 Magnum revolver while traveling from Atlanta, Georgia, to Detroit, Michigan, for the purpose of distributing heroin. Caballero contends, however, that he satisfied his burden of showing clear improbability because no nexus between the firearms and narcotics was established.

---

[2]Caballero acknowledges that he did not dispute the sentencing enhancement under § 2D1.1(b)(1) in the district court and thus is limited to plain error review in this court.

As to nexus, this court "considers various factors in reviewing the question of whether a firearm was related to a particular drug offense, including the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm." *Id.* Caballero's argument hinges principally on the first factor, namely the proximity between the firearms and drugs. He contends that it is clearly improbable that he possessed firearms during the commission of the narcotics offenses because the firearms were recovered from the Honda at the time of Caballero's arrest, while the heroin was later recovered from the Super Eight motel room where Caballero and his co-defendants were staying.

However, contrary to Caballero's argument, this court in *United States v. Tisdale* advised that the Guidelines do not require that the firearms be readily accessible to be connected with the drug offense; rather, a defendant possesses a firearm during the commission of a drug offense if the weapon could have facilitated the illegal transaction. 952 F.2d 934, 937 (6th Cir. 1992); *see also United States v. Stewart*, 926 F.2d 899, 901–02 (9th Cir. 1991) (upholding a sentence enhancement under § 2D1.1(b)(1) where defendant's firearms were possessed fifteen miles from the location of the drug transaction). In this case, Caballero admitted that he and his co-defendants had traveled from Atlanta to Detroit for the purpose of trafficking heroin and that he knowingly possessed both heroin and firearms. OMIT officers seized two handguns from the Honda, along with various pictures of Jesus Malverde, and a K-9 unit positively alerted twice to the Honda, suggesting that drugs had been in the vehicle. Moreover, Caballero pled guilty not only to heroin trafficking and firearms possession charges but also to conspiracy to distribute heroin. Thus, although the firearms and heroin were recovered separately, Caballero possessed the handguns during the commission of

11

the ongoing heroin conspiracy. Accordingly, it is not clearly improbable that the firearms were possessed during the commission of the drug offenses.

Regarding the remaining nexus factors, although the record does not indicate whether the firearms were loaded, we have repeatedly recognized that a .357 Magnum revolver is a type of firearm normally associated with drug trafficking. *See United States v. Bailey*, 394 F. App'x 233, 239 (6th Cir. 2010) (citing cases). In addition, Caballero has not provided "any alternative purpose . . . to explain the presence of the firearm," *Moses*, 289 F.3d at 850, and thus has not satisfied the burden of demonstrating clear improbability. Consequently, the district court did not plainly err when it imposed a two-level sentence enhancement pursuant to § 2D1.1(b)(1).

III.

For the foregoing reasons, we affirm the decision of the district court in all aspects.