91 F.3d 144
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rebecca L. COWARD, Defendant-Appellant.
 No. 95-4138.
 United States Court of Appeals, Sixth Circuit.
 July 05, 1996.
 
 Before: JONES, NELSON, and NORRIS, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an appeal from an 18-month sentence for conspiracy to distribute cocaine. Based on a finding that the defendant possessed a firearm, the district court (Matia, J.) determined that the sentence range prescribed by the United States Sentencing Guidelines was imprisonment for 18-24 months. If a weapon had not been possessed, the range would have been 12-18 months.
 
 
 2
 Contending that the firearm finding was erroneous, the defendant asks us to remand the case for resentencing. The government raises no jurisdictional issue, notwithstanding that the sentence would have been within the guideline range whether or not the district court had found that a firearm was possessed. On the merits, however, the government denies that the district court's finding was clearly erroneous.
 
 
 3
 We agree with the government that there was no clear error here. Pretermitting the question of whether the sentence is appealable at all, we shall affirm on the merits.
 
 
 4
 * In October of 1994, according to a presentence investigation report prepared for the district court by a probation officer, law enforcement officials began to investigate suspected drug dealing by a man named Ashley Coward. A confidential source indicated that Mr. Coward's wife, defendant Rebecca Coward, was arranging cocaine sales for her husband. The sales were said to be conducted from the Coward residence at 721 West Warren Avenue in Youngstown, Ohio.
 
 
 5
 On January 12, 1995, a federal search warrant was executed at the West Warren address. The officers who executed the warrant reportedly saw Mrs. Coward running through the house with what appeared to be two small bags of cocaine. Mrs. Coward was chased into the kitchen, where she managed to dissolve the contents of one of the bags in some dishwater. The contents of the other bag were dispersed on the kitchen counter and floor.
 
 
 6
 Next to Mrs. Coward's purse, which was in a room adjacent to the kitchen, the officers found a Smith & Wesson revolver. We are told that the gun had been sent to Mrs. Coward earlier in the day by her mother. The officers also found several cocaine scales, traces of cocaine, drug records, and a computer monitor with drug transactions documented on the screen. All of these items were confiscated, and Mrs. Coward was placed under arrest.
 
 
 7
 While the above-described events were unfolding at the West Warren residence, another team of agents executed another search warrant at a house on the opposite side of town. The defendant's husband, Mr. Coward, was arrested at the other house with a large quantity of cocaine.
 
 
 8
 Mr. and Mrs. Coward and two other people were subsequently indicted on federal drug charges. Count 1 of the indictment charged all four individuals with conspiracy to distribute cocaine over a period extending from September 13, 1994, to January 12, 1995. Other counts charged Mrs. Coward with possession of cocaine with intent to distribute it. Among the possession counts was one (Count 9) relating to the two ounces of cocaine allegedly possessed on the day of her arrest, January 12, 1995.
 
 
 9
 Pursuant to Rule 11, Fed.R.Crim.P., Mrs. Coward entered into a written plea agreement with the United States. Mrs. Coward acknowledged that she was in fact guilty of the charge set forth in Count 1 of the indictment, and she agreed to plead guilty to that count. The remaining charges were dropped.
 
 
 10
 Paragraph 5 of the plea agreement memorialized Mrs. Coward's understanding that the district court would consider her relevant conduct, including uncharged conduct, in determining the applicable sentence range. Paragraph 6 stipulated that for purposes of determining the sentence range the amount of cocaine connected with Count 1 was approximately 181 grams. This was the amount that was both readily provable by the government and reasonably foreseeable by Mrs. Coward, the parties agreed, referring to the facts that (a) "only a trace of the suspected cocaine in Count 9 was ever recovered," and (b) that Mrs. Coward "could not reasonably have foreseen the large portion of cocaine" seized with her husband when he was arrested at the cross-town location. "[T]he prior sales of cocaine," as the plea agreement recited, "were for relatively small amounts and all occurred at [the defendant's] residence."
 
 
 11
 Under the drug quantity table set forth in U.S.S.G. § 2D1.1(c), the base offense level for conspiracy to distribute at least 100 grams but less than 200 grams of cocaine is 18. From that starting point the parties stipulated that Mrs. Coward would receive a three-level reduction under U.S.S.C. § 3B1.2, based on her mitigating role in the offense, and a two-level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility.
 
 
 12
 The probation officer initially recommended that the district court use an adjusted offense level of 13 in computing Mrs. Coward's guideline range. Mrs. Coward had no prior criminal convictions, a fact that placed her in Criminal History Category I. The guideline range for these variables is 12-18 months.
 
 
 13
 The government objected to the presentence report as initially issued, contending that because Mrs. Coward had been in possession of a firearm at the time of her arrest there should be a two-level increase in the offense level pursuant to U.S.S.G. § 2D1.1(b)(1). The probation officer agreed. The two-level enhancement brought the guideline range to 18-24 months. The district court accepted the recommendation for the offense level enhancement and imposed a sentence of 18 months. Mrs. Coward has perfected a timely appeal.
 
 II
 
 14
 U.S.S.G. § 2D1.1(b)(1) prescribes a two-level increase in the offense level "[i]f a dangerous weapon (including a firearm) was possessed...." Application Note 3 in the accompanying commentary says, among other things, that
 
 
 15
 "The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." (Emphasis supplied.)
 
 
 16
 In the case at bar the district court did not consider it "clearly improbable" that the Smith & Wesson revolver found in the house at 721 West Warren Avenue was connected with the drug conspiracy in which Mrs. Coward was admittedly engaged. Under the "clear error" standard that governs our review of factual findings such as this, see United States v. Medina, 992 F.2d 573, 592 (6th Cir.1993), cert. denied, 114 S.Ct. 1049 (1994), we cannot say that the district court was wrong.
 
 
 17
 Mrs. Coward argues that the 181 grams of cocaine used to calculate her base offense level were drugs that had been sold prior to the day on which she received the gun from her mother. But Mrs. Coward was still actively involved in the conspiracy when the gun arrived, and she appears to have been in possession of two small bags of cocaine after she received the gun. The government's election to drop the possession charge did not preclude the district court from taking uncharged conduct into account, as Mrs. Coward expressly acknowledged in Paragraph 5 of the plea agreement.
 
 
 18
 It is undisputed that a trace of cocaine was found in the kitchen where Mrs. Coward was arrested on January 12, 1995, and it is undisputed that Mrs. Coward had a handgun in the next room at that time. The residence at 721 West Warren Avenue was the headquarters of the conspiracy, moreover, and the conspiracy was still in progress at the time of Mrs. Coward's arrest. It was well within the district court's province to reject the notion that "it [was] clearly improbable that the weapon was connected with the offense."
 
 
 19
 In United States v. Zimmer, 14 F.3d 286 (6th Cir.1994), the principal Sixth Circuit decision on which Mrs. Coward relies, there was unrefuted testimony that the rifles there at issue were for hunting purposes and had no connection with the drug operation in which the defendant was engaged. The case at bar is different; there has been no testimony in this case that the handgun at issue here was unconnected to the conspiracy in which Mrs. Coward was a participant.
 
 
 20
 In United States v. Montgomery, 14 F.3d 1189 (7th Cir.1994), on which Mrs. Coward also relies, the court held that the defendant had not been shown to have possessed a gun during the particular crack cocaine sales that formed the basis of his conviction. The Montgomery court was at pains to point out that the defendant in that case "was not convicted of an ongoing conspiracy...." Id. at 1199. Mrs. Coward, in contrast, was convicted of an ongoing conspiracy--and it is not at all improbable, in our view, that the weapon she received shortly before her arrest was connected with the conspiracy.
 
 
 21
 For the reasons stated, and for the reasons given by Judge Matia at the time of sentencing, the sentence is AFFIRMED.