*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0163P (6th Cir.)
File Name: 02a0163p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　*v.*

TERRY MOSES,
　　　　　*Defendant-Appellant.*

No. 00-6722

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 00-00003—R. Allan Edgar, Chief District Judge.

Argued: March 22, 2002

Decided and Filed: May 7, 2002

Before: NORRIS, SILER, and GILMAN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** James F. Logan, Jr., LOGAN, THOMPSON, MILLER, BILBO, THOMPSON & FISHER, Cleveland, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** James F. Logan, Jr., LOGAN, THOMPSON, MILLER, BILBO, THOMPSON & FISHER, Cleveland, Tennessee, for Appellant. Perry H. Piper,

1

ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

––––––––––––––

**OPINION**

––––––––––––––

RONALD LEE GILMAN, Circuit Judge. Terry Moses pled guilty to one count of conspiring to manufacture marijuana in violation of 21 U.S.C. § 846. The district court subsequently sentenced Moses to 39 months in prison, followed by 4 years of supervised release. In calculating Moses's sentence, the court increased his base offense level pursuant to United States Sentencing Guidelines § 2D1.1(b)(1), which provides for a two-point enhancement where a defendant possesses a dangerous weapon during the commission of a drug-trafficking offense. Moses now appeals his sentence, arguing that the district court erred in imposing the two-point enhancement. He also argues that he should have received the benefit of United States Sentencing Guidelines § 5C1.2, the so-called "safety-valve" provision that, under certain circumstances, allows a defendant to receive a sentence below the statutory minimum. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

The present case arises from a marijuana-manufacturing enterprise conducted by Moses and his codefendant, Johnny Keith Buff. This enterprise commenced in September of 1999, when Moses and Buff began cultivating marijuana seeds in a barn owned by Moses. The marijuana seeds eventually produced 200 small marijuana plants. Moses and Buff moved many of these plants to a fenced plot of land near the Cherokee National Forest in Polk County, Tennessee.

Agents with the National Forest Service discovered the marijuana patch in October of 1999. The patch contained 174 marijuana plants, ranging between three and seven feet in height. Rather than confiscate the plants, the agents set up

two 35-millimeter surveillance cameras nearby. The agents returned to the site 12 days later and found that the plants had been harvested. When they checked the surveillance cameras, however, the agents discovered that a malfunction had prevented any pictures from being taken of the harvest. Seeking to capture the image of any individual who might return to clean up the site, the agents replaced the 35-millimeter cameras with video surveillance equipment. This equipment later recorded Moses and Buff removing the fence and gathering the remaining plant stalks.

After reviewing the surveillance footage, the agents sought to interview Moses about his role in maintaining the marijuana patch. The agents met Moses at his residence, at which time Moses admitted to growing the marijuana and consented to a search of his property. This search led to the recovery of several firearms from Moses's house, including a .22 caliber Ruger pistol. In addition, a shotgun was removed from the gun rack mounted in Moses's pickup truck.

A federal grand jury in the Eastern District of Tennessee returned a five-count indictment against Moses on January 11, 2000. The first two counts charged Moses with conspiring to manufacture marijuana, in violation of 21 U.S.C. § 846, and possessing marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Counts three and four alleged that Moses had possessed various firearms in furtherance of drug-trafficking offenses, in violation of 18 U.S.C. § 924(c). Pursuant to 21 U.S.C. § 853, count five sought the forfeiture of the real property and truck that Moses had allegedly used to facilitate his drug-trafficking offenses.

Moses initially pled not guilty to all of the counts in the indictment, but later entered into a plea agreement with the government. The agreement required Moses to plead guilty to counts one and five. In return, the government agreed to dismiss the remaining counts of the indictment. In June of 2001, Moses withdrew his not guilty plea and pled guilty as agreed.

A presentence investigation report (PSR) was prepared shortly after Moses entered his guilty plea. The PSR recommended that the district court enhance Moses's base offense level by two points pursuant to United States Sentencing Guidelines § 2D1.1(b)(1). This section provides for such an enhancement where a defendant possesses a firearm in connection with a drug-trafficking offense. The PSR recommended an enhancement under this section based upon the finding that Moses had kept a firearm in the truck that he used to harvest the marijuana.

Moses objected to the § 2D1.1(b)(1) enhancement. At his sentencing hearing, Moses testified that the weapons in his house and truck were unrelated to his offense. He said that many of the guns were in taped boxes that had been brought to his house by Buff, who had allegedly asked Moses to store the weapons there. Moses maintained that the other firearms found in his house, as well as the rifle on the gun rack in his truck, were used only for hunting.

The district court, however, did not give full credence to Moses's testimony. Although the court stated that Moses might have used his rifles solely for hunting, it did not believe that Moses hunted with the .22 caliber Ruger pistol recovered from his house. The court concluded that it was not clearly improbable that Moses had possessed this pistol in connection with his offense, and therefore overruled Moses's objection to the § 2D1.1(b)(1) enhancement. This timely appeal followed.

## II.  ANALYSIS

### A.  Firearm enhancement

Moses challenges the enhancement of his base offense level pursuant to United States Sentencing Guidelines § 2D1.1(b)(1). This section provides for a two-point increase in a defendant's offense level if a firearm is "possessed" during a drug-trafficking crime. An enhancement under § 2D1.1(b)(1) is proper only if the government establishes, by a preponderance of the evidence, that (1) the defendant

*United States v. Vincent*, 20 F.3d 229, 234 (6th Cir. 1994). If no error occurred, the "inquiry is at an end." *Id.* In the present case, therefore, we must first decide whether Moses was entitled to the benefit of § 5C1.2.

Moses had the burden of proving by a preponderance of the evidence that he satisfied all of the criteria set forth in § 5C1.2. *United States v. Adu*, 82 F.3d 119, 123-24 (6th Cir. 1996). He thus had to show, among other things, that it was more likely than not that the .22 caliber pistol in his house had no connection to the marijuana-manufacturing conspiracy. To make this showing, Moses offered his own testimony that he used the pistol "for hunting strictly." The district court, however, determined that Moses was not a credible witness in this regard. Moses has not provided us with a convincing reason to second guess the district court's credibility assessment, particularly where, as demonstrated by the analysis set forth above in Part II.A., the record contains no circumstantial evidence indicating that the pistol was unrelated to the conspiracy. Accordingly, we conclude that the district court's failure to apply § 5C1.2 was not error, plain or otherwise.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

In sum, we are unable to say that the district court's determination regarding the connection between Moses's .22 caliber Ruger pistol and his offense was clearly erroneous. We thus conclude that there was no error resulting from the enhancement of Moses's base offense level pursuant to § 2D1.1(b)(1).

**B.   Safety-valve adjustment**

Moses also contends that the district court erred in denying him the benefit of United States Sentencing Guidelines § 5C1.2, often referred to as the "safety-valve" provision. This section authorizes a district court to sentence a defendant according to the sentencing guidelines, even if that sentence is below the statutory minimum for the offense. To receive the benefit of § 5C1.2, a defendant must meet several criteria, including the requirement that "the defendant did not use violence or credible threats of violence or *possess a firearm* or other dangerous weapon . . . in connection with the offense . . . ." U.S. Sentencing Guidelines Manual § 5C1.2(a)(2) (emphasis added). Moses argues that the district court's allegedly erroneous decision to impose an enhancement pursuant to United States Sentencing Guidelines § 2D1.1(b)(1) prevented him from receiving the benefit of § 5C1.2.

But Moses did not raise this argument below. In both his written objections to the PSR and his arguments during the sentencing hearing, Moses contended only that his base offense level should not be enhanced pursuant to § 2D1.1(b)(1). We therefore limit our review to whether the district court committed plain error in failing to sentence Moses in accordance with § 5C1.2. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998) ("Where, as here, a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as defined by Fed. R. Crim. P. 52(b) before we may exercise our discretion to correct the error.") (footnote omitted).

Plain error analysis requires us to determine, as an initial matter, "whether an error occurred in the district court."

possessed a dangerous weapon (2) during the commission of a drug-trafficking offense. *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996). If the government proves both of these elements, the weapon is presumed to have been connected to the defendant's offense. *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991). The defendant can rebut this presumption only by showing that it is "clearly improbable that the weapon was connected to the offense." U.S. Sentencing Guidelines Manual § 2D1.1 comment. n.3.

In the present case, the district court found that Moses possessed several firearms while carrying out the marijuana-manufacturing conspiracy. Moses does not dispute this finding. Indeed, Moses acknowledged at the sentencing hearing that he kept firearms in his house during the period of the conspiracy. He further admitted that he used his house to perform acts in furtherance of the conspiracy; namely, drying and weighing the marijuana once it had been removed from the plot of land where it was grown. The government thus met its burden of proving that Moses had possessed dangerous weapons during his offense. *Sanchez*, 928 F.2d at 1460 (holding that a defendant possesses a weapon for the purposes of § 2D1.1(b)(1) if he maintains ownership or control over the weapon itself or the premises where the weapon is located); *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995) (holding that a defendant possesses a weapon during the commission of an offense if the firearm was present at the site of that offense).

Moses contends, however, that he met his burden of showing that any connection between the firearms in his house and the marijuana-manufacturing conspiracy was clearly improbable. The district court found otherwise, concluding that Moses did not adequately disprove a connection between his .22 caliber Ruger pistol and the conspiracy. This factual finding will not be set aside on appeal unless we conclude that it is clearly erroneous. *United States v. Coward*, No. 95-4138, 1996 WL 382258, at *3 (6th Cir. July 5, 1996) (unpublished table decision) (holding that the district court's determination that the defendant did not

prove that a connection between the firearms in his possession and his drug offense was clearly improbable is a factual finding that is subject to the "clearly erroneous" standard of review). A factual finding is clearly erroneous where, although there is evidence to support that finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

This court considers various factors in reviewing the question of whether a firearm was related to a particular drug offense, including the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm. *Hill*, 79 F.3d at 1486. We will now examine each of these factors in turn.

With regard to the proximity factor, Moses testified that he kept the .22 caliber pistol in his bedroom closet. But he never stated where in the house he dried and weighed the marijuana. If he did so in or near the bedroom, the pistol would have been reasonably accessible to Moses as he carried out the conspiracy. *United States v. Noble*, 246 F.3d 946, 954 (7th Cir. 2001) (ruling that where a firearm is located in a closet that is adjacent to a room where drug proceeds are kept, the proximity of the firearm to the proceeds "provides a sufficient nexus to conclude that it was not clearly improbable that the gun was connected with the offense") (internal quotation marks omitted). Moses therefore failed to offer evidence showing that the location of the pistol was inconsistent with the firearm having a connection to the marijuana conspiracy.

The second factor focuses on whether the firearm possessed by a defendant is of a type typically used in drug trafficking. Moses does not contend that a .22 caliber pistol is an uncommon weapon among those who commit drug offenses. Nor could he plausibly do so, because federal appellate courts have consistently upheld § 2D1.1(b)(1) enhancements based upon the defendant's possession of a .22 caliber pistol. *E.g.,*

*United States v. Cruz*, No. 98-1970, 2000 WL 377060, at *2-*3 (6th Cir. April 7, 2000) (unpublished table decision) (upholding a § 2D1.1(b)(1) enhancement where the defendant constructively possessed a .22 caliber pistol while engaged in the distribution of marijuana); *United States v. Duke*, 935 F.2d 161, 162 (8th Cir. 1991) (upholding a § 2D1.1(b)(1) enhancement where a search of the defendant's home "uncovered twenty-three grams of a cocaine-like substance, two scales, and a .22 caliber revolver"). This factor is thus of no help to Moses in showing that it is clearly improbable that the pistol was related to the marijuana conspiracy.

For the third factor, this court looks to whether the firearm was loaded during the drug offense. Moses testified that he could not specifically recall if the .22 caliber pistol was loaded or unloaded during the marijuana-manufacturing conspiracy. He in fact conceded that "[i]f any of them was loaded it could have been that one [the .22 caliber pistol]." Without any evidence showing that the .22 caliber pistol was unloaded, this factor does not aid Moses in avoiding the presumption in favor of the government on this issue.

The last factor examines whether the defendant has offered any alternative explanation for the presence of the firearm. Moses testified that he used the .22 caliber pistol for hunting racoons. The district court determined that Moses's testimony lacked credibility, a determination that is due considerable deference. *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001) ("We are generally reluctant to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor."). In any event, absent any circumstantial evidence indicating that the pistol was used only for hunting, Moses's self-serving testimony is inadequate to justify setting aside the district court's finding that Moses failed to satisfy the "clearly improbable" standard. He did not, for example, offer testimony from any hunting companions to corroborate that he in fact used the .22 caliber pistol for hunting racoons.