**UNITED STATE of America,**
**Plaintiff–Appellee,**

v.

**Van Ashford WEBB, Defendant–**
**Appellant.**

**No. 01–6558.**

United States Court of Appeals,
Sixth Circuit.

May 14, 2003.

Before RYAN and BATCHELDER,
Circuit Judges; and TARNOW,* District
Judge.

BATCHELDER, Circuit Judge.

Defendant Van Ashford Webb, following
his plea of guilty to one count of attempt-
ing to manufacture a mixture and sub-
stance containing a detectable amount of
methamphetamine in violation of 21 U.S.C.
§ 846, appeals the district court's applica-
tion of a two-point sentence enhancement
for possession of a dangerous weapon dur-
ing the commission of a drug trafficking
offense, pursuant to USSG § 2D1.1(b)(1).
We will affirm the judgment of the district
court.

## BACKGROUND

On October 6, 2000, at around three
o'clock in the morning, an off-duty Lauder-
dale County Sheriff's Department officer
was working as a security guard in the
local Wal–Mart, when he observed Webb
purchasing items commonly used in the
manufacture of methamphetamine: Lithi-
um batteries, starter fluid, a garden pump,
and cold pills. After calling for back-up,

---

* The Honorable Arthur J. Tarnow, United
States District Judge for the Eastern District
of Michigan, sitting by designation.

the officer approached Webb, who was by then standing by his pick-up truck in the parking lot. As the officer approached, Webb–remaining outside of the truck– closed and locked the truck door. In response to the officer's inquiry about the items he had just purchased, Webb denied that he was preparing to manufacture methamphetamine. A second officer arrived on the scene and noticed the butt of a firearm on the floorboard of Webb's truck. The officers asked Webb if he had weapons inside his truck, and Webb admitted that there was a pistol on the front seat. Webb gave the officers permission to retrieve the weapon, and the officers told Webb to unlock the truck and step to the rear of the vehicle. After unlocking the door, Webb lunged into the truck where the gun was located. The officers ordered Webb out of the truck, and when he failed to comply, the officers drew their weapons and again ordered him to step back. Webb finally complied, and the officers recovered from the truck a loaded .32 caliber revolver, a loaded 12 gauge pump shotgun and a .22 caliber bolt action rifle, as well as several hundred cold pills and several bags containing 9.6 grams of methamphetamine. A subsequent search warrant executed at Webb's residence yielded more methamphetamine and numerous materials used in manufacturing methamphetamine.

Webb was indicted on three drug-trafficking counts and, pursuant to a plea agreement, he pleaded guilty to one count of attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846. The probation office calculated Webb's initial base offense level as 28 and his criminal history score as zero. After applying a two-level enhancement pursuant to USSG § 2D1.1(b)(1) for the possession of a firearm during the commission of the instant offense, and a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1, the probation office recommended a total offense level of 28. The government and the defendant responded that the base offense level should be twenty-six based on the applicable relevant conduct. The defendant, however, objected to the two level firearm enhancement. The district court found that the appropriate base offense level was 26 and that the firearm enhancement and the acceptance of responsibility reduction were both appropriate, and set the total offense level at 26, which resulted in a sentencing range between sixty-three and seventy-eight months. The court sentenced Webb to sixty-three months' imprisonment and three years of supervised release. Webb timely appealed the two-level firearm enhancement.

## ANALYSIS

We will disturb the factual findings of a district court's sentencing decision only if such findings are clearly erroneous. *United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir.2001). We give "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see also Buford v. United States*, 532 U.S. 59, 63, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001).

We recently described the analysis used in applying the firearms enhancement:

An enhancement under § 2D1.1(b)(1) is proper only if the government establishes, by a preponderance of the evidence, that (1) the defendant possessed a dangerous weapon (2) during the commission of a drug-trafficking offense. *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir.1996). If the government proves both of these elements, the weapon is presumed to have been connected to the defendant's offense. *United States v. Sanchez*, 928 F.2d 1450, 1460

(6th Cir.1991). The defendant can rebut this presumption only by showing that it is "clearly improbable that the weapon was connected to the offense." U.S. Sentencing Guidelines Manual § 2D1.1 comment. n. 3.

*United States v. Moses,* 289 F.3d 847, 850 (6th Cir.2002). The government need not prove that the defendant actually used or carried the weapon; possession is sufficient for application of the enhancement. *United States v. Kincaide,* 145 F.3d 771, 784 (6th Cir.1998).

The district court concluded that Webb constructively possessed the dangerous weapons during the commission of the offense because he knew that the guns were in his truck at the time of the incident and, not only did the officers find a small amount of drugs in the truck, but Webb had just finished a "shopping spree" to purchase the items necessary to make more drugs. Webb argues, however, that he met his burden of demonstrating that the weapons were not connected to the offense of attempting to manufacture methamphetamine. Specifically, Webb claims that the pistol found on his seat had just been returned to him by a friend shortly before Webb went to the local Wal–Mart, and that the shotgun and rifle behind the seat were left there for hunting purposes. Webb argues it was improper for the district court to apply the enhancement merely because the guns were found in the truck in which he drove to the Wal–Mart.

We hold that the district court's findings of fact were not clearly erroneous. Webb's possession of a loaded .32 caliber revolver in the cab of the truck he used to drive to the store to purchase the items necessary for the commission of the offenses does create a strong presumption which is not easily rebutted. The "clearly improbable" standard of the sentencing guidelines requires more than Webb's sim-ple assertion that the loaded gun—owned by him and within reach when he was confronted by the police—was recently placed in the truck by a friend and is therefore not connected to the defendant's attempt to manufacture methamphetamine. *See United States v. Terry,* No. 00–5719, 2001 U.S.App. LEXIS 21216, *2–*3, 20 Fed.Appx. 386, 2001 WL 1178298 (6th Cir. Sept. 24, 2001) (unpublished) (finding that the defendant's "bare assertion that he used the rifle only for hunting" was insufficient to meet his burden after the "rifle was found leaning against the bed in the same trailer as some methamphetamine residue and several thousand pseudoephedrine pills").

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.