NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0329n.06

Case No. 20-5879

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 12, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JARRELL D. WILKERSON, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |
| | ) | |

**BEFORE: CLAY, McKEAGUE, and LARSEN, Circuit Judges.**

**McKEAGUE, Circuit Judge.** While surveilling an area known for drug trafficking late at night, police officers observed Jarrell Wilkerson walking around with an AR-15 style rifle. After going back and forth between multiple cars and speaking to people, Wilkerson put the rifle in his truck and drove away. Officers soon pulled him over after they observed him fail to use his turn signal. One officer immediately smelled marijuana when he approached the truck, and, after arresting Wilkerson, the officers recovered marijuana, cocaine, and the rifle. Wilkerson claims that the officers lacked probable cause for the initial stop because video evidence clearly shows that he used his turn signal. Additionally, he argues that the district court improperly applied a firearm-sentencing enhancement by erroneously finding that he possessed cocaine for drug trafficking rather than for personal use.

We find these arguments to be without merit and **AFFIRM** the district court's judgment.

**I**

Just past midnight on July 27, 2019, Lexington Police Officer Joseph Schiff was in an unmarked car surveilling a street where there had been recent instances of shootings, drug trafficking, and violence. Schiff witnessed Jarrell Wilkerson walk back and forth across the street, approaching different cars and speaking with various people standing near them. When Wilkerson walked under a streetlight, Schiff noticed that he was carrying an AR-15-style rifle. Shortly afterwards, Wilkerson put the rifle inside of a truck parked in a nearby driveway, spoke to a few people near the truck, retrieved the rifle, and proceeded out of Schiff's vision to the other side of the street. Schiff couldn't see what Wilkerson was doing, but he "saw the lights of a car flash" as though a car was being unlocked, and then Wilkerson returned to the truck after a few minutes. Over the next twenty minutes, Wilkerson repeated this entire process "a couple of times." After the last time, Wilkerson put the rifle back into the truck, got in, and drove away, going approximately twenty-five miles per hour over the speed limit and failing to stop at a stop sign.

Schiff reported Wilkerson's location and vehicle description to two nearby officers, who saw a truck matching that description. As the officers began following the truck, they observed Wilkerson make a right turn without using his turn signal. They pulled Wilkerson over and one officer smelled marijuana immediately upon approaching the truck. Wilkerson admitted that he failed to use his turn signal. After removing Wilkerson from the truck, the officers recovered a bag of marijuana and a bag of cocaine from Wilkerson's pockets and arrested him. Upon searching the truck, the officers recovered a rifle matching the one that Schiff had seen earlier, a loaded magazine next to the rifle, and a small amount of cocaine placed inside of a folded-up dollar bill.

Prosecutors charged Wilkerson with one count of possession of a firearm by a convicted felon in violation of 18 § U.S.C. 922(g)(1). Wilkerson moved to suppress all evidence recovered

from the traffic stop, arguing that the police officers used excessive force and that they did not have authority to remove him from the vehicle. The district court denied the motion. Afterwards, Wilkerson pleaded guilty while reserving his right to challenge the denial of the motion to suppress.

In determining Wilkerson's guidelines range, the probation officer recommended applying a four-level sentence enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possession of a firearm in connection with drug trafficking, resulting in a guidelines range of 70 to 87 months. Wilkerson objected to the enhancement, and the parties argued the issue at sentencing. The district court applied the enhancement, and sentenced Wilkerson to a below-guidelines sentence of 60 months' imprisonment.

This appeal followed.

## II

Wilkerson challenges two of the district court's rulings. First, he argues that the district court erred in denying his motion to suppress the evidence from the traffic stop because the video evidence shows that he used his turn signal, so the police had no probable cause to stop him. Second, he argues that the district court erred in applying a four-level sentencing enhancement to Wilkerson's sentence for possession of a firearm in connection with drug trafficking because the cocaine he had was for his personal use. We address each argument in turn.[1]

---

[1] The government contends that Wilkerson forfeited both arguments, but we disagree. For the suppression issue, even though Wilkerson focused below on whether he was justifiably removed from the vehicle, his attorney still actively litigated whether the turn signal was used, questioning the "flash" of lights on the video at multiple points. For the sentencing issue, even though Wilkerson's plea agreement stated that "the United States and the Defendant recommend" that the § 2K2.1(b)(6)(B) enhancement apply to the case, Wilkerson objected to the enhancement and litigated the issue at the sentencing hearing. Therefore, neither argument was forfeited.

Furthermore, the government's arguments are in tension with their own actions at the sentencing hearing. The plea agreement provided for a base offense level of 20, but the government argued for a higher base level, stating that "[t]he fact that we did not agree to something in the plea agreement is unfortunate, but

### A. *Motion to suppress*

Wilkerson argues that the motion to suppress was incorrectly denied because a body camera video played at the suppression hearing clearly shows that he used his turn signal, so the police did not have probable cause for the traffic stop and therefore all evidence recovered from his vehicle must be suppressed. In reviewing a district court's decision on a motion to suppress, "we review findings of fact for clear error and conclusions of law de novo." *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). When the evidence is unclear, we review it "in the light most likely to support the district court's decision." *Id.* (quoting *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004)). "An officer may stop and detain a motorist so long as the officer has probable cause to believe that the motorist has violated a traffic law." *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). Here, in addition to showing the body camera video, the officers at the suppression hearing testified that Wilkerson violated a traffic law by turning without using his signal.

After viewing the video at the suppression hearing and hearing the testimony of Officer Ridener, one of the officers who pulled Wilkerson over, the district court found that the two officers who pulled Wilkerson over "observed the truck turn without signaling." [2] The district

---

there are times you just don't agree on things" and that "it's not binding on the Court." This is true. Wilkerson and the government both made agreements in the plea deal on issues that they later disputed before the district court. There was no forfeiture by Wilkerson in this situation. In the interest of criminal defendants receiving a determination on the merits of their appeals when possible, we encourage the government to avoid bringing meritless forfeiture arguments in cases such as these.

[2] Additionally, the district court found that Officer Schiff saw Wilkerson "walk[] back and forth in the street while carrying an assault rifle" and that he "observ[ed] the truck proceed through a stop sign without stopping and travel[] at a high rate of speed." Officer Schiff told the officers about the Wilkerson's behavior, his possession of the rifle, and him speeding away from the scene. These facts, which were known to the officers who pulled Wilkerson over, may have been sufficient to justify the initial traffic stop even without the failure to use the turn signal. *See Devenpeck v. Alford*, 543 U.S. 146, 155 (2004) (explaining that if the "facts known to the arresting officers give probable cause to arrest," then the arrest is lawful regardless of the officers' expressed reason for the arrest).

court's credibility determinations are subject to "considerable deference" on appeal. *United States v. Moses*, 289 F.3d 847, 851 (6th Cir. 2002). And "[f]indings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review." *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992) (en banc)). In other words, we are bound by the district court's assessment of Officer Ridener's testimony unless we find "a clear basis in the record for rejecting the district court's credibility determinations." *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005).

There is no clear basis here. Wilkerson says that the video evidence of the encounter shows that he clearly did use his turn signal, but we disagree. The video evidence does not objectively show that Wilkerson used his turn signal before turning. If anything, the video evidence supports the officer's testimony that Wilkerson failed to use his turn signal. We do not find the video unclear, but even if we did, it wouldn't matter. *See, e.g.*, *United States v. Braswell*, 704 F. App'x 528, 533 (6th Cir. 2017) ("This [video] evidence, coupled with the officer's credible testimony, supports the conclusion that the district court did not clearly err in determining that [the defendant] committed two traffic violations."). The district court accepted Officer Ridener's version of events, which was supported by Wilkerson's admission on the video that he failed to use his turn signal. We see no clear basis for rejecting the district court's credibility determination, so we affirm the district court's denial of the motion to suppress.

B. *Sentencing enhancement*

Wilkerson argues that the district court improperly applied a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possession of a firearm in connection with trafficking cocaine. This guideline applies where a defendant "possessed any firearm . . . in connection with another felony offense; or possessed . . . any firearm . . . with knowledge, intent,

or reason to believe that it would be used or possessed in connection with another felony offense." *Id.* When a district court finds by a preponderance of the evidence that a defendant was trafficking drugs, then application of the enhancement is warranted if the "firearm is found in close proximity to drugs." *Id.* cmt. n.14(B). Here, Wilkerson admits that his rifle was found close to the cocaine but argues that the district court erred in finding that he was trafficking drugs instead of merely possessing them.

When reviewing the application of this sentencing enhancement, we review "the district court's factual findings for clear error and accord due deference to the district court's determination that the firearm was used or possessed in connection with the other felony, thus warranting the application of the enhancement." *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014) (cleaned up) (describing the standard of review as "deferential").[3]

Wilkerson possessed 12 grams of cocaine when he was arrested. At sentencing, the government offered the expert testimony of a federal agent regarding whether Wilkerson was trafficking cocaine. The agent testified that the 12 grams of cocaine Wilkerson possessed was "a drug trafficking quantity of cocaine" with a street value of $500–600. The agent also noted that there was "cocaine already folded up in a dollar bill in the center console," which supported an inference of trafficking. Finally, the agent noted that Wilkerson's behavior before he drove away was "consistent with narcotics trafficking," which included "meeting with multiple people, . . . carrying a firearm back and forth across the street, [and] appearing to go to other vehicles." After hearing this testimony, the district court concluded that "we've heard an agent testify, and I'm

---

[3] The particulars of our "deferential" review are "somewhat murky" in our Circuit. *See, e.g.*, *United States v. Pruitt*, No. 20-6121, --- F.3d ---, 2021 WL 2407856, at *2 (6th Cir. June 14, 2021); *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020). As in *Pruitt* and *Abdalla*, the parties do not contest the standard of review. Here, we would reach the same conclusion "under any plausible form of deferential review [so] we need not determine the precise review standard." *Abdalla*, 972 F.3d at 850 n.2.

persuaded by her testimony, that the amount is consistent with trafficking, particularly the cocaine."

Wilkerson challenges the district court's application of the enhancement in three ways. First, he argues that the quantity of drugs was not sufficient to show that the drugs were possessed for trafficking rather than personal use. Second, he argues that other traditional indicia of trafficking were lacking, such as scales or bulk cash. And third, he argues that he provided an innocent explanation for his possession of the firearm, so the firearm was not possessed in connection with trafficking. Under our deferential review of the district court's application of the sentencing enhancement, Wilkerson's arguments fail to show clear error.

1. Quantity

Wilkerson claims that the 12 grams of cocaine here is a lesser quantity than in other cases where we have upheld applications of this sentencing enhancement. *See, e.g.*, *United States v. Hardin*, 248 F.3d 489, 501 (6th Cir. 2001) (about 54 grams of cocaine); *United States v. Mooningham*, 762 F. App'x 313, 314 (6th Cir. 2019) (about 46 grams of marijuana and methamphetamine). But "there is no bright-line rule as to what constitutes a dealer amount" of drugs. *United States v. Massey*, 758 F. App'x 455, 461 (6th Cir. 2018). And "the enhancement does not specify a minimum quantity of drugs." *United States v. Neal*, 817 F. App'x 148, 151 (6th Cir. 2020). Instead, we leave such determinations to the district court's discretion. And we have upheld application of the enhancement for amounts smaller than 12 grams. For example, we have held that a district court did not clearly err in in accepting the testimony of an agent that 1.5 grams of cocaine "was more than one would reasonably expect from a recreational user" and upheld the application of the sentencing enhancement. *Id.*

The district court did not clearly err in finding that Wilkerson possessed a quantity of drugs sufficient to show trafficking. Here, the district court heard expert testimony that the cocaine Wilkerson possessed was a trafficking amount. Additionally, we have previously accepted an expert's conclusion that "[a]n ordinary amount for personal use [of cocaine] would be about one gram." *United States v. Miller*, 817 F. App'x 119, 125 (6th Cir. 2020). Wilkerson possessed twelve times that amount, and significant quantities of drugs can lead to an inference of trafficking. *See United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995) ("Intent to distribute can be inferred from the possession of a large quantity of drugs, too large for personal use alone."). The line between personal use and trafficking quantities of drugs is best left for the district court to determine, and we see no clear error in the district court's finding that Wilkerson possessed a drug-trafficking quantity of cocaine.

2. Indicia of trafficking

Next, Wilkerson claims that traditional indicia of drug trafficking were not present, noting that officers did not recover scales, plastic baggies, or bulk cash during the arrest. But plenty of evidence supported an inference of trafficking. For example, an expert testified that the firearm possessed by Wilkerson was "one that is commonly possessed and used by drug traffickers." The district court heard that drug traffickers would not necessarily have money, plastic baggies, or "other paraphernalia or items that are indicative of narcotics trafficking" on them because they could use other means to package the drugs for sale. For example, the district court knew that Wilkerson had some cocaine in the center console of the truck folded up inside of a dollar bill, which would support an inference that some of the cocaine was meant for distribution. Finally, Wilkerson's use of the rifle supports an inference of trafficking. Openly carrying a firearm in public "suggests . . . a great apprehension of serious danger" that "would be less warranted" if the

defendant were only a drug user, rather than a drug distributor. *United States v. Frazier*, 426 F. App'x 401, 404 (6th Cir. 2011).

In this analysis, "[n]o one factor is dispositive; rather, the controlling principle is that the evidence is viewed collectively." *Massey*, 758 F. App'x at 461. Looking at the evidence collectively, it was not clearly erroneous for the district court to find that the cocaine was possessed for trafficking.

3. Innocent explanation

Finally, Wilkerson argues that he offered an innocent explanation for his possession of the firearm. "[W]hether the defendant has an innocent explanation for the firearm" is a factor that the district court should consider in applying this enhancement. *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011). However, there are two key flaws with Wilkerson's explanation.

First, his explanation came during the allocution portion of the sentencing hearing when he claimed that he was at a family barbeque and "was told to remove the rifle from the house because there were kids." Therefore, it was not evidence. The court had already ruled on whether the enhancement applied before Wilkerson spoke. Statements made by the defendant during allocution cannot serve as the basis for evaluating the application of a sentencing enhancement. Otherwise, after the evidentiary portion of the hearing is over, judges would be forced to re-consider rulings they had already made.

Second, even if Wilkerson's explanation were properly before the district court, it wouldn't demonstrate clear error in the district court's application of the enhancement. "[A]n alternative explanation for the presence of a gun does not preclude that gun from *also* being used to facilitate a drug offense." *Id.* at 433 "(alteration in original) (quoting *United States v. Oglesby*, 210 F. App'x 503, 507 (6th Cir. 2007)). Additionally, even if Wilkerson's statement could explain why he

removed the rifle from the house, it couldn't explain why he was carrying the rifle from car to car late at night.

## III

We **AFFIRM** the judgment of the district court.